IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DYNASTUDY, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 4:16-cv-01442 |
| | § | JURY DEMAND |
| HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |
| | § | |
| *Defendant.* | § | |

## DYNASTUDY, INC.'S MEMORANDUM OF LAW

1.   **DEFENDANT'S IMPROPER COPYING OF THE COPYRIGHTED WORKS CONSTITUTES COPYRIGHT INFRINGEMENT.**

   A.   **Ownership of valid copyrights**

   A *prima facie* case of copyright infringement requires the plaintiff to establish (1) ownership of a valid (original) copyright; and (2) that the defendant copied original elements of the work. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 379 F.3d 131, 141 (5th Cir. 2004). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works) and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 345, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).  More importantly, "**the requisite level of creativity is extremely low; even a slight amount will suffice ….**" such that "**[t]he vast majority of works make the grade quite easily**, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id*.

   "A Certificate of Registration, if timely obtained, is prima facie evidence both that a copyright is valid, and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).  And, where a plaintiff has produced prima facie evidence of

originality, such as a Certificate of Registration, "the presumption of ownership will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." *Engenium Solutions, Inc. v. Symphonic Techs., Inc.,* 924 F. Supp. 2d 757, 778-779 (S.D. Tex. 2013), *citing Feist Publ'ns, Inc.*

### B.     Actionable Copying

To show actionable copying, a plaintiff must prove: (1) factual copying and (2) substantial similarity. *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010); *Eng'g Dynamics*, 26 F.3d at 1340-1341. After establishing these threshold requirements, a plaintiff must prove that a defendant "used the accused copies in any of the ways described in Section 106 of the Copyright Statute." *Playboy Enters. v. Russ Hardenburgh, Inc.*, 982 F. Supp. 503, 509 (N.D. Ohio 1997); *Playboy Enters. v. Webbworld Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997).

### 1.     *Factual Copying / Access*

The first prong of actionable copying concerns "whether the alleged infringer copied, or 'actually used the copyrighted material in his own work.'" *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (*quoting Eng'g Dynamics*, 26 F.3d at 1340). While direct evidence of copying can exist, "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity" or "striking similarity" between the copyrighted and accused works. *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 368 (5th Cir. 2004), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), (*citing Peel & Co. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)). "Access" has been defined as a reasonable opportunity to view the copyrighted work. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2 111, 113 (5th Cir. 1978). Copies

that are identical or near-identical to the original preclude the possibility of independent creation and constitute infringement as a matter of law. *Peel*, 238 F.3d at 391; *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 61-62 (1ˢᵗ Cir. 2000); *Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp. 2d 509, 519 (W.D. Va. 2008); 3 NIMMER ON COPYRIGHT § 12.10[B][3] (2010).

### 2. *Substantial Similarity*

In the Fifth Circuit, the test for determining substantial similarity is whether the average lay-person, comparing the copyrighted and accused works side-by-side, would view the two as "substantially similar." *Bridgemon v. Array Sys. Corp.,* 325 F3d 572, 576 (5ᵗʰ Cir. 2003); *see also Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).   The layman's reaction should be "spontaneous and immediate" without any suggestion or critical analysis by others.  *See Peel & Co., Inc. v. Rug Mtk.*, 238 F.3d 391, 398 (5th Cir. 2001).

A court's evaluation of substantial similarity "should be based on the ordinary and reasonable layperson's overall impression of the two works, not on a detailed comparison of the two works, focusing on the individual differences." *Thomas v. Artino*, 723 F. Supp. 2d 822,  (D. Md. 2010), *citing Richmond Homes*, 862 F.Supp. 1517, 1527 (W.D.Va. 1994), aff'd in part and rev'd in part, 66 F.3d 316 (4th Cir. 1995).  Additionally, "to determine substantiality of any portion found arguably to have been copied, a court must determine the copied portion's relative importance with respect to the [copyrighted] over-all work." *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000)(even if the amount copied is relatively small, substantial similarity may be found if the copied portion is qualitatively important).

### C. Violation of DynaStudy's Rights Under § 106

The owner of a valid copyright holds the exclusive rights to reproduce and distribute copies of its Copyrighted Works under 17 U.S.C. § 106(1) and (3).  17 U.S.C. §106; *Playboy Enter., Inc. v. Webbworld Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997).  An unauthorized copy need not be

permanent to infringe, but it must be fixed. For example, in the case of an electronic document or image, unlawful copying occurs when the document or image is downloaded, or copied from a permanent storage device to a computer's random access memory without the copyright owner's express consent. *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 260 (5th Cir. 1988); *Quantlab Techs. Ltd. v. Doglevsky*, 719 F. Supp. 2d 766, 773 (S.D. Tex. 2010); *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 551 (N.D. Tex. 1997).

Likewise, one who distributes copies embodying the copyrighted work without the consent of the copyright owner violates the copyright owner's distribution right. 17 U.S.C. § 106(3). Unauthorized distribution is not limited to physical distribution of copies; unlawful distribution also includes the distribution of copyrighted work electronically, via the Internet or some other computer network, by uploading and downloading programs and files. *Maverick Recording Co. v. Harper,* 598 F.3d 193, 197 (5th Cir. 2010); *Atlantic Recording Corp. v. Anderson,* No. H-06-3578, 2008 WL 2316551, at *7 (S.D. Tex. March 12, 2008); *Atlantic Recording Co. v. Smith,* No. 4:07-CV-00012, 2008 U.S. Dist. LEXIS 112579, at *7 (S.D. Tex. Jan. 7, 2008).

DynaStudy has produced Certificates of Registration for each of the Copyrighted Works at issue herein and HISD's access to DynaStudy's Copyrighted Works is undisputed.  Thus, to the extent the evidence in this case demonstrates that HISD employees made identical or near-identical copies of those Copyrighted Works and/or shared those electronic copies via email, posted them online to teacher-sharing websites or other publicly available websites, and/or printed unauthorized electronic copies to disseminate to colleagues and students—all without the prior and express consent of DynaStudy— then "we have the relatively unique case of both direct and indirect evidence of copying," and DynaStudy is entitled to a finding of copyright infringement as a matter of law. *See Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory,* 689 F.3d 29, 49 (1st Cir. 2012) (holding that bishop's verbatim or near-identical versions of the copyrighted

works constituted copies under the Copyright Act that were embodied in a medium (i.e. the computer server and internet) where they could be perceived by, electronically communicated to, and/or reproduced by those who accessed the server").

**2.    DEFENDANT'S IMPROPER COPYING OF THE COPYRIGHTED WORKS CONSTITUTES VICARIOUS COPYRIGHT INFRINGEMENT.**

Though statutory, copyright law is still part of the law of torts. Thus, employers are vicariously liable for the torts of their employees, including copyright infringement, under the theory of *respondeat superior*. *Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1349-1350 (5th Cir. 1994); *Magicon, LLC v. Weatherford Int'l, Inc.,* No. 4:08-cv-03639, 2009 U.S. Dist. LEXIS 126496 at *7 (S.D. Tex. Aug. 10, 2009). Vicarious liability requires proof that a defendant: (1) has the right and ability to supervise the infringing conduct; and (2) has an obvious and direct financial interest in the infringement. *Jack Prestonwood: Design, Inc. v. BL Building, Co.,* No. H-03-713, 2004 WL 5866352 at *19 (S.D.Tex. June 22, 2004), *citing* Gordon v. Nextel Communs., 345 F.3d 922, 925 (6th Cir. 2003). The defendant's lack of knowledge of the infringement is irrelevant. *Id.; Sony Discos, Inc. v. E.J.L. Family P'ships*, No. H-02-3729, 2010 WL 1270342 at *2-3 (S.D. Tex. March 31, 2010).  As with direct infringement, intent or knowledge of the infringement is not an element of a claim for vicarious liability; "innocence" therefore, is no defense. *See Playbow Enters., Inc. v. Webbworld, Inc.,* 991 F. Supp. 543, 553-554 (N.D. Tex. 1997), *citing Peer Int'l Corp. v. Luna Records, Inc.,* 887 F. Supp. 560, 565 (S.D.N.Y. 1995) and *Swallow Turn Music,* 831 F. Supp. at 578-579.

The "right and ability" prong is satisfied when a defendant "declines to exercise a right to stop or limit" infringement by others they control. *Grokster*, 545 U.S. at 930; *see also Metcalf v. Bochco,* 294 F.3d 1069, 1072-1073 (9th Cir. 2002) (established law confirms that agency principles may apply in the copyright context); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.,* 338

Fed. Appx. 329, 336 (4th Cir. 2009) (employer may be liable for the copyright infringement of its employees/agents); *d'Abrera v. U.S.,* 78 Fed. Cl. 51, 59 (Fed. Cl. 2007) (same).  And an obvious and direct financial interest in the infringement does not require actual commercial gain. Indeed, removing money from the equation does not, under copyright law, remove liability for transgressing another's works. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 584 (1994) ("the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement"); *Sony Corp. of Am. V. Universal City Studios, Inc.,* 464 U.S. 417, 450 ("even copying for non-commercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have"); *Harper & Row Publrs. V. Nation Enters.,* 471 U.S. 539, 562 (1969) (focus centers on "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price").

Here, there is no dispute that HISD has the right and ability to supervise and control its own employees.  To the extent the evidence demonstrates that HISD failed to police its own employees, website, and servers despite repeated notice by DynaStudy, and that HISD used unauthorized copies of DynaStudy's Copyrighted Works without paying the customary price for the use of the materials, HISD is vicariously liable for the copyright infringement of its employees as a matter of law.

**3.     DEFENDANT'S COPYING WAS WILLFUL.**

A defendant's infringement is willful under §504 if he (1) knows or reasonably should know his actions constitute an infringement, (2) "recklessly disregards the possibility that his conduct might constitue infringement," or (3) was provided with oral or written notice of his transgression of the copyright. *Lance v. Freedie Records, Inc.,* 1993 U.S. App. LEXIS 40601 *4 (5th Cir. Feb. 17, 1993); *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 236 (5th Cir. 1988); *Microsoft Corp., v. Software Wholesale Club, Inc.,* 129 F. Supp. 2d 995, 1002 (S.D. Tex. 2000),

*citing see also Island Software & Computer Serv. V. Microsoft Corp.,* 413 F.3d 257, 263 (2nd Cir. 2005); *Controversy Music v. Down Under Pub Tyler, Inc.,* 488 F. Supp. 2d 572, 578 (E.D. Tex. 2007), *citing Kepner-Tregoe, Inc. v. Vroom,* 186 F.3d 283, 288 (2d Cir. 1999). Actual knowledge is not required; constructive knowledge satisfies the willfulness standard. *Id., citing Fitzgerald Publ'g Co. v. Baylor Publ'g Co., Inc.,* 807 F.2d 1110, 1113 (2d Cir. 1986).  Evidence that the defendant was on notice of the infringement before the infringement occurred has been deemed 'persuasive evidence of willfulness.'" *Id., citing Swallow Turn Music v. Wilson,* 831 F. Supp. 575, 579 (E.D. Tex. 1993).  Thus, "although lack of actual knowledge and intent do not shield a defendant against copyright infringement liability, proof of a culpable mental state may become a plaintiff's sword in the damages phase of a copyright suit." *Id.*

There are two kinds of willfulness in the copyright context: (1) knowing that a particular use is copyright infringement; and (2) knowing that the normal course of business involves a pattern of repeated copyright infringements. *Swallow Turn Music,* 831 F. Supp. at 580. "Should the latter situation occur, then willfulness proven as to the course of business will suffice for willfulness for any particular occurrence of copyright infringement. A [defendant] who has been repeatedly warned that a course of conduct violates the law should take responsibility in seeing that it does not happen again." *Id.*  In *Swallow Turn Music,* the business owner received numerous letters from the copyright owner advising him of the infringement and offering him a license. The business owner refused a license and the infringement continued.  Ultimately, the court concluded that as early as 1990, the defendant "was warned that his usual business practices violated copyright laws" such that the defendant "[could] not shield himself by a willing veil of ignorance woven … between himself and his employees…." *Id.* Accordingly, "[a]fter so much notice over so much time, [defendant could] not claim he did not know." *Id.*

Accordingly, to the extent the evidence demonstrates that HISD's employees were familiar with DynaStudy's Copyrighted Works and the copyright protections expressly noted therein, but intentionally copied and/or distributed such materials without the express authority of DynaStudy (i.e. through legitimate purchase), such infringement was willful and the willfulness of its employees is imputed to HISD.  Separately, to the extent the evidence establishes that HISD received notice that the normal course of its business involved a pattern of repeated copyright infringements, then willfulness is proven for any particular occurrence of copyright infringement by HISD's employees as a matter of law.

4.    **DEFENDANT'S REMOVAL OR ALTERATION OF DYNASTUDY'S CMI CONSTITUTES A VIOLATION OF THE DMCA.**

Section 1202(b)(1) of the DMCA prohibits a person from intentionally removing or altering any CMI without the copyright owner's permission.  *See* 17 U.S.C. §1202(b)(1) "Courts have applied this statute in a straightforward manner such that [DynaStudy] need only establish (1) the existence of Copyright Management Information on the work in question; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Sheldon v. Plot Commerce,* 2016 U.S. Dist. LEXIS 116135, *35 (E.D.N.Y. Aug. 26, 2016), *quoting BanxCorp. v. Costco Wholesale Corp.,* 723 F. Supp. 2dd 594, 609 (S.D.N.Y. 2010). The DMCA defines CMI to include, among other things:

- the title and other information identifying the work, including the information set forth on a notice of copyright;
- The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright; and
- Terms and conditions for use of the work.  *Id.*

It is undisputed that DynaStudy's original Copyrighted Works include DynaStudy's copyright notice in the left-hand margin and an express term of use—i.e., a prohibition against copying—in the bottom margin. Such information qualifies as CMI pursuant to the plain language of the statute.

*See* 17 U.S.C. §1202(c). Thus, any intentional removal of this information is a direct violation of the DMCA as a matter of law.

Given this plain language, HISD's intentional removal of DynaStudy's CMI constitutes a violation of the DMCA. *Id.* For example, specific to DynaStudy's Biology EOC, it is undisputed that CMI (i.e. DynaStudy's copyright notice and terms of use) exists in the left and bottom margins of the original document. It is also undisputed that HISD's Michael Partridge intentionally removed that CMI as he was scanning the original Biology EOC to make an unauthorized electronic copy (in multiple formats including both .PDF and .docx). Based on the plain language of the statute, the intentional removal or alteration of DynaStudy's CMI, such as that undertaken by HISD's Michael Partridge, is a direct and actionable violation of the DMCA as a matter of law.

**5.      DEFENDANT'S DISTRIBUTION OF DYNASTUDY'S MATERIALS WITH THE KNOWLEDGE THAT CMI HAD BEEN REMOVED OR ALTERED, WHERE DEFENDANT KNEW OR SHOULD HAVE KNOWN THE DISTRIBUTION WOULD INDUCE, ENABLE, FACILITATE, OR CONCEAL INFRINGEMENT, CONSTITUTES A VIOLATION OF THE DMCA.**

Section 1202(b)(3) of the DMCA also prohibits one from distributing copies of copyrighted works with the knowledge that the CMI has been altered or removed and knowing, or having reasonable grounds to know, that the distribution will induce, enable, facilitate, or conceal an infringement of any right under the DMCA. *See* 17 U.S.C. §1202(b)(3). Thus, to show a violation of § 1202(b)(3) of the DMCA, DynaStudy need only demonstrate (1) HIDS's distribution of DynaStudy's materials (2) with the knowledge that CMI had been removed or altered and (3) reasonable grounds that HISD should have known such distribution would induce, enable, facilitate, or conceal infringement. *Id.* As noted above, each of DynaStudy's original Copyrighted Works includes DynaStudy's copyright notice in the left-hand margin and an express term of use— i.e., a prohibition against copying—in the bottom margin. Such information qualifies as CMI pursuant to the plain language of the statute. *See* 17 U.S.C. §1202(c). Accordingly, HISD's

distribution of any copies of DynaStudy's materials in which CMI was known to have been removed or altered, and when HISD knew or should have known the distribution would induce, enable, facilitate or conceal infringement, constitutes a direct violation of the DMCA.

By way of example, also as discussed above, HISD's Michael Partridge openly admits that he created an unauthorized copy of DynaStudy's Biology EOC in which he intentionally removed the CMI in the left and bottom margins, despite the express prohibition against copying. Partridge further admits that he distributed his copy, with CMI removed, to his biology department co-workers, *each of whom had previously received an original classroom set of DynaStudy's Biology EOC with all CMI intact*. *Id.*  Partridge also admits that a number of those co-workers then passed the altered copy (absent its CMI) along to others within the district.  *Id.* Based on a plain reading of the statute, this distribution by Partridge's co-workers—each of whom knew that CMI had been removed or altered in Partridge's copy and each of whom knew or should have known that their further distribution would induce, enable, facilitate, or conceal infringement given their knowledge and possession of the original—violates the plain language of the DMCA as a matter of law.

6.    **Defendant is not entitled to any safe harbor protections under the DMCA as a matter of law because Defendant cannot satisfy the definitions of "Internet Service Provider," has not adopted nor reasonably implemented a policy for terminating repeat copyright infringers, and cannot satisfy the additional specific requirements for safe harbor under 17 U.S.C. § 512(c) or (d).**

A.    <u>**HISD is not entitled to the protection of any of the safe harbor provisions because it cannot meet the threshold requirements**</u>

Before a service provider can take advantage of any of the safe harbor provisions set forth in 17 U.S.C. § 512, it must satisfy two threshold determinations: the defendant (1) must meet the applicable definition of "service provider;" and (2) must adopt and reasonably implement a policy which terminates the access of users who are identified as repeat infringers. *In re Aimster,* 252 F.

Supp. 2d 634, 659-660, quoting H.R. Rep. No. 105-551 (II) (1998)).  HISD cannot satisfy either threshold requirement and is not entitled to safe harbor protection as a matter of law.

### 1. *HISD cannot meet the definitions for "Internet Service Provider" applicable to the DMCA.*

For HISD's asserted safe harbor provisions (17 U.S.C. § 512 subsections (c) and (d)), "Internet Service Provider" is defined as "a provider of online services or network access or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). While this definition is arguably more broad, the protections afforded under the DMCA are intended for passive and innocent third-party service providers.  *In re Aimster,* 252 F. Supp. 2d 634, 657 (N.D. Ill. 2002), citing *ALS Scan, Inc. v. RemarkQ Communities, Inc.,* 239 F.3d 619, 625 (4th Cir. 2001) (citing H.R. Rep. No. 105-796 at 72 (1998)). The DMCA's protection of an innocent service provider disappears "at the moment the service provider loses its innocence, i.e. at the moment it becomes aware that a third party is using its system to infringe." *Id.* "The hypothetical 'reasonable person' to whom infringement must be obvious is an ordinary person—not endowed with specialized knowledge or expertise concerning music or the laws of copyright." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016) *citing Capital Records, LLC v. Vimeo, LLC,* 826 F.3d at 93-94. That said, "[i]t is . . . entirely possible that an employee of the service provider . . . may well have known that [a] work was infringing, or known facts that made this obvious." *Id*. at 97. "If the facts actually known by an employee of the service provider make infringement obvious, the service provider cannot escape liability through the mechanism of the safe harbor."

The Fourth Circuit addressed very similar facts in *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.,* 338 Fed. Appx. 329, 336 (4th Cir. 2009).  There, the court expressly noted that "[t]his case does not involve third-party copyright infringement or the "automatic copying, storage, and transmission of copyrighted materials … instigated by others … [n]or does it involve a defendant

that engages in 'conduct typically engaged in by an ISP.'" *Id.*, *quoting CoStar Group, Inc. v. Loopnet, Inc.,* 373 F.3d 544, 555 (4th Cir. 2004). Instead, the court held, the case dealt with copying that, at minimum, was instigated by Sprint's own employees. Unlike a true ISP, "who has no control over the content that its users upload to the Internet," the *Quantum* court held that Sprint's original loading of the software onto its computers was volitional, that "[e]ach copy of the Quantum software was within Sprint's control, and the actions of Sprint's employees [were] attributable to Sprint." *Id.* The same is true here. Unlike a true ISP, HISD has complete authority and control over its own employees, who copied, uploaded, and distributed the content at issue. Given this important distinction, HISD cannot satisfy even the more broad definition of "internet service provider" as set forth in subsections (a) and (c) and, therefore, is not entitled to any safe harbor protections as a matter of law.

### 2.   *HISD did not adopt and reasonably implement a policy of terminating repeat offenders.*

HISD likewise cannot satisfy the second threshold requirement for safe harbor protection under any subsection of § 512 because it failed to adopt and reasonably implement a system for even identifying—much less terminating the access of—repeat offenders among its own employees.   Adopting a policy without any hope of implementing that policy is not "implementation" as required by § 512. *See UMG Recordings, Inc. v. Grande Communs. Networks, LLC,* 2018 U.S. Dist. LEXIS 212592 (W.D. Tex. Dec. 18, 2018); *see also Corbis Corp. v. Amazon, Inc.,* 351 F. Supp. 2d 1090, 1102-1103 (W.D. Wa. 2004) (granting Plaintiff's partial MSJ on unavailability of DMCA safe harbor on claims associated with copies uploaded to website owned and operated by Amazon and specifically related to the actions of the ISP and not "others," because the website's own policy made it impossible for Amazon to even identify repeat offenders).

Here, HISD's Rule 30(b)(6) representative testified that while HISD has allegedly created a policy requiring compliance with all federal copyright law, it has neither adopted nor implemented any system for even *identifying* repeat offenders, much less terminating their access to HISD's servers.  Because it cannot even identify repeat offenders, HISD has no hope of "adopting and reasonably implementing" a policy of terminating repeat offenders, or even restricting their access to HISD's system, servers, and/or email. In fact, HISD admits it has not terminated the employment or access of any HISD employee on the basis of repeat copyright infringement.  HISD is not entitled to any safe harbor protection as a matter of law.  *UMG Recordings,* 2018 U.S. Dist. LEXIS 212592 at *6 (noting agreement among all circuits that have addressed the issue that "at a minimum, a 'reasonably implemented' policy [has] to at least be occasionally enforced").

### B.      HISD cannot satisfy the statutory requirements of subsection (c)

In order to qualify for safe harbor under §512(c), an internet service provider must register with the U.S. Copyright Office in its own name and provide its full legal name and address, and "all alternate names that the public would be likely to use to search for the service provider's designated agent in the Copyright Office's online directory." *See* 37 C.F.R. § 201.38(a)(1), (b)(1)(i) and (b)(2).  Subsection (b), referenced above, further provides that "[t]o designate an agent, a service provider must make available through its service, including on its website in a location accessible to the public, **and provide to the Copyright Office** … the following information:

(1)(i)   **The full legal name and physical address of the service provider**.
Related or affiliated service providers that are separate legal entities (e.g., corporate parents and subsidiaries) are considered separate service providers and **each must have its own separate designation**.

*and*

(3)    The name of the agent designated to receive notifications of claimed

infringement and, if applicable, the name of the agent's organization….

(4)    The physical mail address (street address or post office box), telephone

number and email address of the agent designated to receive notifications

of claimed infringement.

*Id.* (emphasis added).

Thus, in addition to identifying its DMCA agent on its website, **a service provider asserting safe harbor under §512 (c) must prove that it has registered with the U.S. Copyright Office by providing, its "full legal name and physical address,"** as well as its designated agent, **including "all alternate names that the public would be likely to use to search for the service provider's designated agent in the Copyright Office's online directory of designated agents**, including all names under which the service provider is doing business…." *See* 37 C.F.R. § 201.38(a)(1), (b)(1)(i) and (b)(2) (emphasis added). The purpose of this statutory requirement is to ensure that the public has access to all registered service providers through the U.S. Copyright Office directory/database. *See BWP Media USA Inc. v. Hollywood Fan Sites LLC,* 115 F. Supp. 3d 397, 402 (S.D.N.Y. 2015). Equally important is the requirement that service providers who are separate legal entities provide separate registration to the U.S. Copyright Office. *Id.* at (b)(1)(i).

Finally, as a further requirement for eligibility for safe harbor, new requirements under the DMCA as of 2017 require that all service providers must register electronically in order to maintain safe harbor protection—even if the service provider previously filed a paper registration. *Id.* at (c) and (e)(2). Any designation not made through the online registration system expired after December 31, 2017. *Id.*

HISD cannot satisfy each of these express statutory requirements and, therefore, is not entitled to assert the defense of safe harbor under § 512 (c) as a matter of law.  Namely, HISD has never registered with the Copyright Office as a service provider and, therefore, has no presence whatsoever in the Copyright Office directory/database. And although HISD maintains that it has designated Blackboard as its DMCA agent, HISD is a separate legal entity from Blackboard and must submit its own registration directly to the U.S. Copyright Office before it can properly designate a third party as its DMCA agent under 37 C.F.R. § 201.38.

Additionally, HISD has provided no evidence whatsoever to demonstrate its proper electronic registration prior to December 31, 2017, such that any prior registration, even if valid (which DynaStudy disputes), expired as a matter of law. In addition, in its draft jury instructions provided to DynaStudy, HISD has no less than five instructions on the internet service provider or "safe harbor" affirmative defense. To be clear, there is no fact issue regarding registration with the Copyright office, it either happened or it did not. Because HISD has never registered as an internet service provider with the U.S. Copyright Office it would be legally erroneous to allow the jury to determine this affirmative defense and prejudicial to DynaStudy. HISD cannot be considered an internet service provider as a matter of law.

**C.**     **HISD cannot satisfy the statutory requirements for safe harbor under § 512(d)**

In order to qualify for safe harbor under §512(d), an internet service provider must meet the initial threshold requirements addressed above (i.e. must satisfy the definition of an ISP and adopt and reasonably implement a policy of terminating repeat infringers).  Additionally, a defendant seeking safe harbor under §512(d) must demonstrate (among other requirements):

- It does not have actual knowledge that the material or activity is infringing; OR

- In the absence of such knowledge, is not aware of facts or circumstances from which infringing activity is apparent; AND

- Does not receive a financial benefit directly attributable to the infringing activity in a case in which the service provider has the right and ability to control such activity.

- designate an agent to receive notifications of claimed infringement, and make the agent's name, phone number, and email address available on its website *and to the Copyright Office. See* 17 U.S.C. § 512(b), (c)(3), (i) and (k); *see also* Ninth Circuit Model Civil Jury Instructions at 17.29

*See* 17 U.S.C. § 512(d)(1), (2); Ninth Circuit Model Civil Jury Instructions at 17.29

### 1.    *HISD had actual knowledge of the infringing activity or, at a minimum, was aware of facts or circumstances from which infringing activity was apparent*

As discussed above, HISD's employees all had actual knowledge of DynaStudy and its DynaNotes® brand materials, had actual knowledge of the copyright protections plainly stated on the face of the original DynaStudy materials—in fact, they repeatedly referred to their unauthorized copies as "DynaNotes" even when the copyright management information had been removed.  HISD cannot willfully shield itself from the actual knowledge of its employees.  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016) ("If the facts actually known by an employee of the service provider make infringement obvious, the service provider cannot escape liability through the mechanism of the safe harbor"). Still further, HISD was placed on actual notice of the ongoing infringement in repeated notices from DynaStudy beginning in early 2012, yet the infringement continued.

### 2.    *HISD received a financial benefit attributable to the infringement*

Pursuant to the plain language of § 512(d)(2), one who benefits financially from infringement is not entitled to safe harbor protection as a matter of law. And despite HISD's inferences to the contrary, in the context of copyright infringement and the publishing industry, the United States Supreme Court has very clearly expressed that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."

*Harper & Row, Publrs v. Nation Enters.,* 471 U.S. 539, 562 (1985).  There can be no doubt that

HISD directly benefitted from the use of hundreds of copies of DynaStudy's Copyrighted Works

that the district did not purchase or otherwise license. *Id.* (holding that the defendant's use of the

copyrighted work supplanted the copyright holder's commercially valuable rights). Consequently,

HISD cannot satisfy the statutory requirements for safe harbor under § 512(d) as a matter of law.

Dated:  February 4, 2019                         Respectfully submitted,

                                                 */s/ Gary R. Sorden*
                                                 Darin M. Klemchuk
                                                 Texas Bar No. 24002418
                                                 SDTX Bar No. 23662
                                                 darin.klemchuk@klemchuk.com
                                                 Gary R. Sorden
                                                 Texas Bar No. 24066124
                                                 gary.sorden@klemchuk.com
                                                 Tim Craddock
                                                 Texas Bar No. 24082568
                                                 tim.craddock@klemchuk.com
                                                 KLEMCHUK LLP
                                                 8150 N. Central Expressway
                                                 10th Floor
                                                 Dallas, Texas 75206
                                                 Tel: 214-367-6000
                                                 Fax: 214-367-6001

                                                 **ATTORNEYS FOR PLAINTIFF
                                                 DYNASTUDY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have deemed to have consented to electronic service via the Court's CM/ECF system are being served with a copy of this document on February 4, 2019 as follows:

Jonathan R. Spivey
LaTasha M. Snipes
Stacianne M. Wilson
BRACEWELL LLP
711 Louisiana, Suite 2300
Houston, TX  77002
jonathan.spivey@bracewell.com
latasha.snipes@bracewell.com
staci.wilson@bracewell.com

Cheyenne Pate
BRACEWELL LLP
1445 Ross Avenue, Suite 3800
Dallas, TX  75202
cheyenne.pate@bracewell.com

**ATTORNEYS FOR DEFENDANT**
**HOUSTON INDEPENDENT SCHOOL DISTRICT**

/s/ Gary R. Sorden
Gary R. Sorden